# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW MEXICO

LESLIE MARQUEZ,

      Plaintiff,

vs.                                                         No. 1:20-CV-00110-KRS

ANDREW SAUL, Commissioner of
Social Security,

      Defendant.

## MEMORANDUM OPINION AND ORDER

THIS MATTER is before the Court upon Plaintiff Leslie Marquez's Motion to Reverse and/or Remand (Doc. 28), dated September 28, 2020 challenging the determination of the Commissioner of the Social Security Administration ("SSA") that Marquez is not entitled to disability insurance benefits under Title II and Title XVI of the Social Security Act, 42 U.S.C. §§ 401-34, 1381-83f. The Commissioner responded to Marquez's motion on December 21, 2020 (Doc. 33), and Marquez filed a reply brief on January 11, 2021 (Doc. 34). With the consent of the parties to conduct dispositive proceedings in this matter, *see* 28 U.S.C. § 636(c); FED. R. CIV. P. 73(b), the Court has considered the parties' filings and has thoroughly reviewed the administrative record. Having done so, the Court concludes that the ALJ did not err and will therefore DENY Plaintiff's motion.

### I. PROCEDURAL POSTURE

On February 16, 2016, Marquez filed an initial application for disability insurance benefits. (*See* Administrative Record ("AR") at 136). Marquez also filed an application for supplemental security income on June 7, 2016. (*Id.* at 137). Marquez alleged that she had become disabled on December 30, 2013, due to alcohol dependency, grief, anxiety,

costochondritis of the left lower rib cage, impacted cerumen, otitis media, pharyngitis, sinusitis, low back pain, contusions at multiple sites, domestic abuse, major depressive disorder, and a right knee injury. (*Id.* at 118-19). Her applications were denied at the initial level on October 4, 2016 (*id.* at 136-37), and at the reconsideration level on January 23, 2017 (*id.* at 160-61). Marquez requested a hearing (*see id.* at 183-85), which ALJ Lillian Richter conducted on June 21, 2018 (see *id.* at 77-117). Marquez was represented by counsel and testified at the hearing. (*Id.* at 77, 82-112). A vocational expert also testified at the hearing. (*Id.* at 112-15).

On April 12, 2019, the ALJ issued her decision finding that Marquez was not disabled under the relevant sections of the Social Security Act. (*Id.* at 59-71). Marquez requested that the Appeals Council review the ALJ's decision (*id.* at 244-46), and on January 14, 2020, the Appeals Council denied the request for review (*id.* at 1-4), which made the ALJ's decision the final decision of the Commissioner. In declining the request for review, the Appeals Council rejected certain evidence as not relating to the period at issue or otherwise failing to show a reasonable probability that it would change the outcome of the decision. (*See id.* at 2). On February 6, 2020, Marquez initiated this action seeking review of the Commissioner's decision. (Doc. 1).

## II. LEGAL STANDARDS

### A. Standard of Review

Judicial review of the Commissioner's decision is limited to determining "whether substantial evidence supports the factual findings and whether the ALJ applied the correct legal standards." *Allman v. Colvin*, 813 F.3d 1326, 1330 (10th Cir. 2016); *see also* 42 U.S.C. § 405(g). If substantial evidence supports the ALJ's findings and the correct legal standards were applied, the Commissioner's decision stands, and the plaintiff is not entitled to relief. *See, e.g.*, *Langley v. Barnhart*, 373 F.3d 1116, 1118 (10th Cir. 2004). Although a court must meticulously review the

entire record, it may neither reweigh the evidence nor substitute its judgment for that of the Commissioner. *See, e.g.*, *id.* (quotation omitted).

Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *See Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (quotation omitted); *Langley*, 373 F.3d at 1118 (quotation omitted). Although this threshold is "not high," evidence is not substantial if it is "a mere scintilla," *Biestek*, 139 S. Ct. at 1154 (quotation omitted); "if it is overwhelmed by other evidence in the record," *Langley*, 373 F.3d at 1118; or if it "constitutes mere conclusion," *Grogan v. Barnhart*, 399 F.3d 1257, 1261-62 (10th Cir. 2005) (quotation omitted). Thus, the Court must examine the record as a whole, "including anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met." *Grogan*, 399 F.3d at 1262. While an ALJ need not discuss every piece of evidence, "[t]he record must demonstrate that the ALJ considered all of the evidence," and "a minimal level of articulation of the ALJ's assessment of the evidence is required in cases in which considerable evidence is presented to counter the agency's position." *Clifton v. Chater*, 79 F.3d 1007, 1009-10 (10th Cir. 1996). "Failure to apply the correct legal standard or to provide this court with a sufficient basis to determine that appropriate legal principles have been followed is grounds for reversal." *Byron v. Heckler*, 742 F.2d 1232, 1235 (10th Cir. 1984) (quotation omitted).

### B. Disability Framework

"Disability," as defined by the Social Security Act, is the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A). The SSA has devised a five-step sequential evaluation process to determine disability. *See Barnhart v.*

3

*Thomas*, 540 U.S. 20, 24 (2003); *Wall v. Astrue*, 561 F.3d 1048, 1051-52 (10th Cir. 2009); 20 C.F.R. §§ 404.1520, 416.920. If a finding of disability or non-disability is directed at any point, the SSA will not proceed through the remaining steps. *Thomas*, 540 U.S. at 24. At the first three steps, the ALJ considers the claimant's current work activity and the severity of her impairment or combination of impairments. *See id.* at 24-25. If no finding is directed after the third step, the Commissioner must determine the claimant's residual functional capacity ("RFC"), or the most that she is able to do despite her limitations. *See* 20 C.F.R. §§ 404.1520(e), 404.1545(a)(1), 416.920(e), 416.945(a)(1). At step four, the claimant must prove that, based on her RFC, she is unable to perform the work she has done in the past. *See Thomas*, 540 U.S. at 25. At the final step, the burden shifts to the Commissioner to determine whether, considering the claimant's vocational factors, she is capable of performing other jobs existing in significant numbers in the national economy. *See id.*; *see also Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988) (discussing the five-step sequential evaluation process in detail).

### III. THE ALJ'S DETERMINATION

The ALJ reviewed Marquez's claim pursuant to the five-step sequential evaluation process. (AR at 60-61). First, the ALJ found that Marquez had not engaged in substantial gainful activity since her alleged onset date of December 30, 2013. (*See id.* at 61-62). The ALJ then found at step two that Marquez suffered from several non-severe impairments as well as the following severe impairments: polysubstance abuse, post-traumatic stress disorder, generalized anxiety disorder, insomnia, major depressive disorder, lumbago, and lateral epicondylitis. (*See id.* at 62). At step three, the ALJ concluded that Marquez did not have an impairment or combination of impairments that met the criteria of listed impairments under Appendix 1 of the SSA's regulations. (*See id.* at 62-64).

Proceeding to the next step, the ALJ reviewed the evidence of record, including Marquez's subjective symptom evidence, a third-party function report from Marquez's mother, and certain opinions and other evidence provided by medical and non-medical sources. (*See id.* at 64-69). In doing so, the ALJ afforded little weight to the opinion on physical limitations provided by treating physician G. Michael Lopez, M.D. (*See id.* at 68). The ALJ further found that the statement of Marquez's mother was "generally consistent" with medical evidence of record, though she found that the opinions of objective medical sources were "more persuasive" to the extent that they conflicted with the report from Marquez's mother. (*See id.*). Based on her review of the record evidence, the ALJ concluded that Marquez possessed an RFC to perform light work with certain physical and mental restrictions. (*See id.* at 64).

Moving to step five, the ALJ determined that while Marquez was unable to perform any past relevant work, she could perform other jobs in significant numbers in the national economy. (*See id.* at 69-70). The ALJ therefore concluded that Marquez's work was not precluded by her RFC and that she was not disabled. (*See id.* at 70).

## IV. DISCUSSION

Marquez argues that the Appeals Council erred in its refusal to consider certain opinion evidence from her treating physician, that the ALJ erred in rejecting other opinion evidence from that provider, that the ALJ improperly failed to adopt limitations reported by her mother, and that the ALJ failed to engage in a proper analysis of her RFC. (*See* Doc. 28 at 21-25). For the reasons described herein, the Court finds that these arguments are not well-taken.

### A. Appeals Council Evidence

As noted, the ALJ issued her decision denying benefits to Marquez on April 12, 2019. (AR at 71). The record thereafter reflects a statement of opinions concerning Marquez's mental

limitations from Dr. Lopez, Marquez's treating physician, dated May 7, 2019. (*See* AR at 13-17). Marquez submitted this opinion to the Commissioner while her request for review was pending before the Appeals Council, though the precise date of that submission is unclear from the record. (*See* Doc. 34 at 4) ("[T]he record does not indicate exactly when Dr. Lopez's opinions were submitted to the Appeals Council . . . ."). In denying Marquez's request for review, the Appeals Council rejected Dr. Lopez's mental-limitation opinions on the grounds that those opinions "do[] not relate to the period at issue" and therefore did not impact the ALJ's decision. (AR at 2). Marquez now argues that the Appeals Council erred by failing to properly consider these opinions. (*See* Doc. 28 at 23-25).[1] The Commissioner responds that the Appeals Council was entitled to reject those opinions because Marquez failed to show good cause for the timing of their submission and because those opinions were not related to the period at issue and did not show a reasonable probability of changing the outcome of her case. (*See* Doc. 33 at 16-20).

Departing from the usual substantial-evidence rule governing SSA appeals, the question of whether evidence was "erroneously rejected" by the Appeals Council is a question of law reviewed *de novo* by the Court. *See Krauser v. Astrue*, 638 F.3d 1324, 1328 (10th Cir. 2011) (citing *Threet v. Barnhart*, 353 F.3d 1185, 1191 (10th Cir. 2003)).[2] As a general rule, a claimant must "inform [the Commissioner] about or submit any written evidence . . . no later than 5

---

[1] Marquez also submitted other records from Dr. Lopez following the ALJ's decision. (*See* AR at 8-12). The Appeals Council rejected this evidence on grounds that it "does not show a reasonable probability that it would change the outcome of the decision." (AR at 2). Marquez does not assert error on this basis. (*Cf.* Doc. 28 at 23-25).
[2] The Commissioner suggests that the *de novo* standard no longer applies in these circumstances because that standard was "derived from . . . relevant regulations" before those regulations were recently amended. (Doc. 33 at 17-18) (quoting *Krauser*, 638 F.3d at 1328). This argument is meritless, since regulatory changes alone cannot overrule binding Tenth Circuit precedent. *See Garcia v. Bd. of Cnty. Comm'rs*, No. 09-cv-00322 BB/WDS, 2010 WL 11618983, at *7 (D.N.M. Nov. 30, 2010) (quotation omitted) ("[D]istrict courts are 'bound to apply Tenth Circuit precedent unless the precedent has been overruled by the Tenth Circuit sitting en banc or superseded by a contrary Supreme Court decision.'"). This is particularly true here since the regulations in question do not expressly purport to overrule the established standard of judicial review. *Cf.* 20 C.F.R. § 404.970(a)(5), (b). Until such time as *Krauser* is properly overruled, the Court will continue to apply *de novo* review when considering whether the Appeals Council erroneously rejected evidence. *See* 638 F.3d at 1328.

business days before the date of the [ALJ's] hearing." 20 C.F.R. § 404.935(a). If the claimant misses this deadline and the ALJ thereafter denies benefits, the Appeals Council only considers additional evidence that was not before the ALJ if (i) that evidence is "new, material, and relates to the period on or before the date of the hearing decision," 20 C.F.R. § 404.970(a)(5); (ii) "there is a reasonable probability that the additional evidence would change the outcome of the decision," *id.*; and (iii) the claimant shows "good cause" for not submitting the evidence to the ALJ, *see id.* § 404.970(b).

Although she bears the burden to establish that the good-cause prong of the analysis is satisfied,[3] Marquez does not address that issue in her motion to remand (*cf.* Doc. 28 at 23-25), instead choosing only to respond to the Commissioner's arguments on that point in her reply brief (*see* Doc. 34 at 4). The Tenth Circuit follows the general rule that an argument raised for the first time in a reply brief is deemed abandoned or waived. *See, e.g.*, *United States v. Redcorn*, 528 F.3d 727, 738 n.4 (10th Cir. 2008) (citation omitted). Marquez's failure in her opening brief to attempt to establish good cause regarding her untimely submission of Dr. Lopez's mental-

---

[3] The Appeals Council did not reject Dr. Lopez's May 2019 statement due to lack of good cause, instead finding that his opinion "d[id] not relate to the period at issue." (AR at 2). There is dispute among courts in this District as to whether the Court should address the recently enacted good-cause requirement of § 404.970(b) where the Appeals Council did not reject evidence on that basis. *Compare, e.g.*, *Bleau v. Saul*, No. 19-cv-00300 KK, 2020 WL 1049252, at *6 (D.N.M. Mar. 4, 2020) (citing *Emmons v. Saul*, No. 19-cv-00102 KBM, 2020 WL 376708, at *5 (D.N.M. Jan. 23, 2020)) (declining to undertake good-cause analysis where Appeals Council did not reject evidence for lack of good cause and Commissioner took no position on issue), *with Lopez v. Soc. Sec'y Admin.*, No. 19-cv-00316 MV/GJF, 2020 WL 3542268, at *3-4 & nn.9-12 (D.N.M. June 30, 2020) (quoting *Emmons*, 2020 WL 376708, at *5) (rejecting conclusion that courts reviewing question *de novo* are "'constrained to review' (or may choose to review) only 'the propriety of the *reason actually offered by the Appeals Council*'"), *and Hite v. Saul*, 457 F. Supp. 3d 1175, 1181-85 (D.N.M. 2020) ("In this Court's *de novo* review, it matters not whether the [Appeals Council] made a finding or expressed any opinion whatsoever on the good cause requirement . . . because this Court is required to take a fresh look at that question altogether unburdened by what the AC thought about it."). In the decisions holding that good cause need not be addressed unless the Appeals Council rejected evidence on that basis, the claimant typically raised this argument herself, *see, e.g.*, *Bleau*, 2020 WL 1049252, at *6 ("The Court *agrees with Ms. Bleau* that, under the circumstances, it need not undertake a good-cause analysis.") (emphasis added); *Emmons*, 2020 WL 376708, at *5 (noting plaintiff's argument), or else the Commissioner did not dispute that good cause existed, *see Bisbee v. Berryhill*, No. 18-cv-00731 SMV, 2019 WL 1129459, at *3 n.6 (D.N.M. Mar. 12, 2019). Given that the Commissioner *has* disputed the presence of good cause here, and given that Marquez has addressed that issue without arguing that the Court should not do so, the Court will review whether Marquez has shown good cause for her late submission as part of its *de novo* review of the Appeals Court's rejection of evidence.

limitation opinions therefore constitutes waiver of that issue, and the Court may reject her argument on this basis alone. *See, e.g.*, *Maestas v. Berryhill*, No. 17-cv-1248 SMV, 2019 WL 1226729, at *5 (D.N.M. Mar. 15, 2019) (citing, *e.g.*, *Hamilton v. Sec'y of HHS*, 961 F.2d 1495, 1501 (10th Cir. 1992)).

Moreover, Marquez's belated good-cause arguments regarding her failure to submit Dr. Lopez's relevant opinions to the Commissioner before the deadline set forth in 20 C.F.R. § 404.935(a) are without merit. For present purposes, "good cause" is shown only where the Commissioner's action "misled" the claimant, where the claimant was prevented from submitting the evidence earlier by "a physical, mental, educational, or linguistic limitation(s)," or where she was prevented from submitting it by "[s]ome other unusual, unexpected, or unavoidable circumstance beyond [her] control." 20 C.F.R. § 404.970(b)(1)-(3). Permissible examples of appropriate circumstances "beyond [one's] control" include but are not limited to the claimant's own serious illness, the death or serious illness of a family member, destruction of damage of important records by accidental causes, an Appeals Council review of the merits of the ALJ's decision, and situations where the claimant "actively and diligently sought evidence from a source and the evidence was not received or was received less than 5 business days prior to the hearing." *See id.* § 404.970(b)(3)(i)-(v).

Here, Marquez does not raise any issues regarding misleading circumstances, limitations, death or illness, or damage to records. *Cf.* 20 C.F.R. § 404.970(b)(1), (2), (3)(i)-(iii). The record also reflects that the Appeals Council did not elect to review the ALJ's decision on the merits. (*See* AR at 1); *cf.* 20 C.F.R. § 404.970(b)(3)(v). Marquez does point out in her reply brief (*see* Doc. 34 at 4) that her appellate paperwork stated that she was "attempting to get a complete medical source statement from Dr. Lopez" regarding her mental limitations (AR at 245).

However, nothing in the record indicates when Marquez first requested this relevant statement from Dr. Lopez, what efforts she made to ensure that it was timely submitted to the Commissioner before the ALJ's hearing, or even the date that she actually submitted the statement to the Commissioner. (*See id.*). In other words, there is no indication in the record that Marquez "actively and diligently" sought Dr. Lopez's opinions on mental limitations but was nonetheless unable to procure them before the deadline to do so. *Cf.* 20 C.F.R. § 404.970(b)(3)(iv).

Marquez raises other arguments concerning good cause, but none of these arguments were made to the Appeals Council at the time that she submitted Dr. Lopez's opinions on her mental limitations. *See Hite v. Saul*, 457 F. Supp. 3d 1175, 1183-84 (D.N.M. 2020) (rejecting post hoc good-cause argument because claimant "was required to demonstrate good cause *at the time* of his submission(s) to the AC" but "*never even attempted* to show good cause at all" at that time). Further, none of these arguments—that current counsel was "uninvolved prior to the [ALJ] hearing decision," that Dr. Lopez's opinions were dated after the ALJ's decision, or that the Appeals Council took eight months to resolve her appeal—on their face present the sort of "unusual, unexpected, or unavoidable circumstance[s] beyond [Marquez's] control" that would warrant waiver of the Commissioner's evidentiary-submission deadlines. *See* 20 C.F.R. § 404.970(b)(3). For these reasons, Marquez has not established that she showed good cause for her failure to submit Dr. Lopez's relevant opinions prior to the deadline set forth in 20 C.F.R. § 404.935(a), and the Court declines to remand on the basis of the Appeals Council's rejection of this untimely evidence.

## B. Treating Physician Opinion

Marquez was treated by Dr. Lopez for approximately seven years prior to the ALJ's decision. (*See* AR at 80) (noting treatment for "[o]ver six years" at June 2018 hearing). In May 2016, Dr. Lopez provided an opinion finding that Marquez had significant limitations in a variety of physical functions, including postural limitations and other limitations in her ability to stand, walk, and/or sit throughout the day. (*See id.* at 762-64). The ALJ afforded little weight to Dr. Lopez's opinions, finding that these opinions were "unsupported by Dr. Lopez' own treatment notes and inconsistent with other medical evidence of record." (*Id.* at 68). Marquez argues that the ALJ improperly weighted Dr. Lopez's opinions in light of their consistency with other medical evidence and other factors that should be considered. (*See* Doc. 28 at 21-23). The Commissioner responds that the ALJ properly concluded that Dr. Lopez's opinions were inconsistent with record evidence and otherwise properly weighted those opinions. (*See* Doc. 33 at 13-16).

SSA regulations provide that an ALJ should "[g]enerally, . . . give more weight to opinions from [claimant's] treating sources." *See Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th Cir. 2003) (citing 20 C.F.R. § 404.1527(c)(2)).[4] Usually "[t]he treating physician's opinion is given particular weight because of his 'unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations.'" *See Doyal v. Barnhart*, 331 F.3d 758, 762 (10th Cir. 2003) (quotation omitted). However, the general rule concerning treating physicians gives way under certain circumstances. If the ALJ finds that the treating physician's

---

[4] Plaintiff's claims were filed before March 27, 2017, meaning that the new regulations concerning the handling of medical opinion evidence found at 20 C.F.R. § 404.1520c and 20 C.F.R. § 404.920c do not apply to this proceeding. Although Plaintiff applied for benefits under both Title II and Title XVI, the Court hereinafter cites only to the regulations promulgated under Title II and does not also cite to the parallel regulations under Title XVI.

opinion is not "well-supported by medically acceptable clinical and laboratory diagnostic techniques" or is not "consistent with other substantial evidence in the record," then the ALJ may choose to afford less than controlling weight to the physician's opinion. *See Watkins*, 350 F.3d at 1300 (citing SSR 96-2p, 1996 WL 374188, at *2 (July 2, 1996)[5]). In such cases, the ALJ must consider certain factors in determining what weight to assign to the opinion, including

> (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion.

*See id.* (quoting *Drapeau v. Massanari*, 255 F.3d 1211, 1213 (10th Cir. 2001)).

Although the ALJ need not expressly discuss all of these factors, he must fully consider them and give "good reasons" for his weighting of the treating physician's opinions. *See id.*; *see also Oldham v, Astrue*, 509 F.3d 1254, 1258 (10th Cir. 2007) (citing SSR 06-03p, 2006 WL 2329939, at *5 (Aug. 9, 2006)) (recognizing that "[n]ot every factor for weighing opinion evidence will apply in every case"). In particular, "[t]he record must demonstrate that the ALJ considered all of the evidence," and he must discuss not just the evidence supporting his decision, but also "the uncontroverted evidence he chooses not to rely upon" and "significantly probative evidence he rejects." *See Clifton v. Chater*, 79 F.3d 1007, 1009-10 (10th Cir. 1996). Further, the ALJ may not "pick and choose among medical reports, using portions of evidence favorable to his position while ignoring other evidence." *Carpenter v. Astrue*, 537 F.3d 1264, 1265 (10th Cir. 2008) (quotation omitted).

---

[5] SSRs are binding on the SSA, and while they do not have the force of law, courts traditionally defer to SSRs since they constitute the agency's interpretation of its own regulations and foundational statutes. *See Sullivan v. Zebley*, 493 U.S. 521, 531 n.9 (1990); 20 C.F.R. § 402.35; *see also Andrade v. Sec'y of Health & Human Servs.*, 985 F.2d 1045, 1051 (10th Cir. 1993) (SSRs entitled to deference).

Marquez raises several grounds for contending that the ALJ failed to follow controlling legal standards. She first argues that the ALJ "fail[ed] to complete the two-step analysis" by altogether ignoring the first of those steps. (*See* Doc. 28 at 22). However, the ALJ's conclusion that Dr. Lopez's opinions were "unsupported by [his] own treatment notes" was sufficient to establish that she had determined that Dr. Lopez's opinions were not well-supported by medically acceptable clinical techniques, which in turn was sufficient to establish that Dr. Lopez's opinions were not entitled to controlling weight at the first step of the analysis. *See Mays v. Colvin*, 739 F.3d 569, 574-75 (10th Cir. 2014) (citation omitted) (declining to reverse on argument that ALJ failed to "expressly state" whether treating physician opinion was given controlling weight, since finding that opinion was "not consistent with the objective medical evidence" sufficed to "implicitly" signal affording of less-than-controlling weight). Because the ALJ's decision makes clear her implicit conclusion that Dr. Lopez's opinions were not entitled to controlling weight and her reasoning for this conclusion, Marquez's argument to the contrary is without merit.

Marquez next contends that the ALJ erred in failing to address Dr. Lopez's opinion regarding her purported sitting limitations when affording weight to his statements, essentially arguing that the ALJ should have discussed this opinion in light of the medical evidence concerning her healed rib fractures. (*See* Doc. 28 at 22). The Commissioner responds that Marquez has not pointed to any evidence in the record to support a sitting limitation. (*See* Doc. 33 at 16). In her reply brief, Marquez cites evidence that she previously presented to medical providers with complaints of chest and back pain, fatigue, arthralgias, myalgias, and weakness, and she notes that she has testified regarding difficulty sitting due to back pain. (Doc. 34 at 8-9).

A key problem with Marquez's argument is that the ALJ found that her subjective symptom evidence concerning her back pain was "not entirely consistent with the medical evidence and other evidence in the record" (*see* AR at 65), a finding that Marquez does not dispute in this proceeding. While the ALJ found that Marquez "complained of lower back pain on occasion" and should be limited to "occasional" stooping and crouching on that basis, she also cited medical evidence in finding that Marquez's back pain was no more limiting than that, given that Marquez "consistently demonstrated a full range of motion and proper reflexes[] and an intact spine" while "exhibit[ing] no costovertebral tenderness in the back" even after taking a fall. (*See id.* at 67). Since the ALJ effectively rejected Marquez's statements concerning the allegedly greater impact and extent of her lower back pain in light of the full evidentiary record, the ALJ's failure to address those statements further when discussing Dr. Lopez's opinions was not error. *See, e.g.*, *Arvizo v. Colvin*, No. 12-cv-00981 SMV, 2013 WL 12329082, at *4 (D.N.M. Oct. 31, 2013) (citing *Blea v. Barnhart*, 466 F.3d 903, 915 (10th Cir. 2006)) (finding no error in ALJ's failure to address lay testimony, absent showing that testimony was uncontroverted). As to the remainder of the symptoms she cites, Marquez points to no medical evidence or opinions associating these symptoms with any purported limitation on her ability to sit. Therefore, the ALJ's failure to explicitly discuss Dr. Lopez's opinions concerning sitting limitations did not amount to a failure to apply the correct legal standard.

Marquez also argues that the ALJ failed to discuss the length of Dr. Lopez's treatment relationship with her or the frequency of his exams. (*See* Doc. 28 at 22). The Commissioner responds that the ALJ acknowledged the fact of the treatment relationship. (*See* Doc. 33 at 15-16). As Marquez suggests (*see* Doc. 34 at 8 n.4), there are limits to the viability of the Commissioner's argument here; after all, if the Court is unable to discern the degree to which the

13

ALJ considered *any* of the relevant *Watkins* factors, then an ALJ's mere references to a provider's treating relationship with the claimant and passing citations to his treatment records will not establish that she properly considered the length of that relationship and the frequency of examinations. *See, e.g.*, *Hays v. Soc. Sec. Admin.*, No. 17-cv-00700 JCH/KK, 2019 WL 522051, at *9 (D.N.M. Feb. 11, 2019), *R&R adopted*, 2019 WL 1056279, at *3 (D.N.M. Mar. 6, 2019). But it is also true that the ALJ is not required to expressly discuss "each of the six relevant factors in deciding what weight to give a medical opinion." *Oldham*, 509 F.3d at 1258 (citation omitted). The references here to Dr. Lopez's own treatment notes, "along with the ALJ's citation to contrary, well-supported medical evidence, satisfies the requirement that the ALJ's decision be 'sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight.'" *See id.* (quoting *Watkins*, 350 F.3d at 1300). "The ALJ provided good reasons in [her] decision for the weight [s]he gave to the treating source['s] opinions. Nothing more was required in this case." *Id.*; *see also, e.g.*, *Yotter v. Berryhill*, No. 17-cv-00202 CG, 2017 WL 6001765, at *6 (D.N.M. Dec. 4, 2017) (finding no error where ALJ did not expressly discuss, *e.g.*, extent of relationship and frequency of examination).

Marquez's next arguments, regarding Dr. Lopez's opinions on standing and walking, require some explanation. In his statement of opinions, when asked whether Marquez's ability to stand and walk was impaired, Dr. Lopez circled "no." (AR at 762). However, when asked to "specify" those limitations if the answer was yes, Dr. Lopez indicated that Marquez could only walk and stand "less than 2 hrs." in an eight-hour workday. (*Id.*). The ALJ implicitly resolved this inconsistency by construing Dr. Lopez's opinion as finding a "less than 2 hours" limitation on standing and walking, but the ALJ also found that this opinion was inconsistent with evidence

that Marquez can ambulate without assistive devices and has consistently demonstrated full range of motion and full motor strength in her extremities. (*See* AR at 68). Rather than directly challenging the ALJ's resolution of Dr. Lopez's inconsistent opinions, Marquez raises contradictory arguments: that the evidence of normal ambulation is consistent with Dr. Lopez's alleged finding of *no* walking or standing impairment (*see* Doc. 28 at 22 & n.12), and that the ALJ failed to consider evidence supporting Dr. Lopez's finding that her ability to walk and stand *was* impaired (*see* Doc. 34 at 9). The Commissioner, for his part, argues that this internal inconsistency in Dr. Lopez's statement itself justified the ALJ's decision to discount his opinions. (Doc. 33 at 14).

The Commissioner's post hoc argument regarding the impact of Dr. Lopez's inconsistent opinions is due to be disregarded, since the ALJ's decision does not itself discuss this inconsistency. *See Haga v. Astrue*, 482 F.3d 1205, 1207-08 (10th Cir. 2007). But it is also apparent from the record that the ALJ resolved this inconsistency to conclude that Dr. Lopez had found that Marquez possesses walking and standing limitations. (*See* AR at 68). It is the ALJ's prerogative to resolve inconsistencies in the medical evidence, *see, e.g.*, *Smith v. Colvin*, 821 F.3d 1264, 1268 (10th Cir. 2016), and Marquez cites no error in the ALJ's resolution of those inconsistencies here. Accordingly, Marquez's argument that the evidence supports Dr. Lopez's purported finding of *no* limitation (see Doc. 28 at 22 & n.12) is without merit, since the ALJ reasonably construed Dr. Lopez's statement as opining that such a limitation actually existed.

Marquez also argues that the ALJ failed to consider evidence that supported Dr. Lopez's opinion that she possessed standing and walking limitations. (*See, e.g.*, Doc. 34 at 9). To the

extent that these arguments were first raised in Marquez's reply brief,[6] they are deemed waived. *See, e.g.*, *Redcorn*, 528 F.3d at 738 n.4. But in either case, the evidence cited by Marquez was not probative to the ALJ's analysis. The record that Marquez primarily highlights (*see* Doc. 28 at 5, 22) involves a January 2017 visit to New Mexico Orthopaedics for left leg pain when walking or climbing stairs, which was treated with a single steroid/painkiller injection. (*See* AR at 683-85). Although Marquez was advised to follow up "on an as needed basis" if the pain returned (*see id.* at 685), the record reflects no further visits to New Mexico Orthopaedics (*cf. id.* at 748-61). Later visits with Dr. Lopez and other providers describe no further issues with walking or standing. (*See, e.g.*, *id.* at 676) (May 2017 visit addressing injuries to left arm); (*id.* at 689-90) (October 2017 examination reflecting normal ambulation and tender elbow); (*id.* at 667-68) (April 2018 hospital visit reflecting no walking or standing problems and no injury to extremities, despite kicks to lower limbs); (*id.* at 686-88) (April 2018 visit reflecting normal ambulation and no complaints concerning walking or standing). Further, these and other records cited in Marquez's reply brief (*see* Doc. 34 at 9) (citations omitted) generally describe normal ambulation and relate no difficulties walking or standing. In this context, Marquez's January 2017 complaints of leg pain appear to address an acute pain issue that resolved with treatment, rather than a persistent limitation on ambulation. Thus, there is no basis for concluding that the ALJ ignored or improperly rejected probative evidence in assessing Dr. Lopez's opinions on standing and walking.

Marquez closes by suggesting that the ALJ's rejection of Dr. Lopez's opinions was not supported by substantial evidence. (*See* Doc. 28 at 23) (contending that "the evidence cited by

---

[6] Although Marquez's opening brief addressed two pages of medical records from New Mexico Orthopedics in discussing the ALJ's weighting of Dr. Lopez's opinions (*see* Doc. 28 at 5, 22), references to other treatment records in this context appear for the first time in her reply brief (*see* Doc. 34 at 9).

the ALJ is either confirmed by Dr. Lopez's opinions or, at the very least, does not contradict it"). But the ALJ cited multiple records that were facially inconsistent with Dr. Lopez's opinions, including some of Dr. Lopez's own treatment notes. (*See* AR at 68) (citations omitted). Because the ALJ properly considered whether Dr. Lopez's opinions were well-supported and consistent with the record as a whole, *see Watkins*, 350 F.3d at 1300, and because more than "a mere scintilla" of evidence supports the ALJ's conclusions on these questions, *see Biestek*, 139 S. Ct. at 1154, the Court cannot say that the ALJ's weighting of Dr. Lopez's opinions was unsupported by substantial evidence.

As long as an ALJ gives "good reasons for the decision that are sufficiently specific to make clear to any subsequent reviewers the weight given to the treating source's medical opinion and the reason for that weight," her weighting of that opinion will not be disturbed. *See Praytor v. Comm'r, SSA*, 750 F. App'x 723, 726 (10th Cir. 2018) (unpublished) (quotation omitted). Here, the ALJ weighed Dr. Lopez's opinions in accordance with governing legal standards and supported the assigned weight by reference to substantial evidence. The Court therefore declines to remand on the basis of this weighting.

### C. Third-Party Function Report

Marquez contends in her opening brief that the ALJ "overlooked numerous limitations contained in [a] third-party function report to which the ALJ afforded persuasive weight." (*See* Doc. 28 at 25). In a footnoted citation, Marquez elaborates that she is referring to the opinion of her mother, who reported limitations on Marquez's ability to lift, walk, stand, and pay attention. (*See id.* at 25 n.16) (citing AR at 313). The ALJ afforded "significant weight" to the opinions in the function report to the extent they did not differ with the opinions of objective medical sources, which the ALJ found to be more persuasive. (AR at 68). Although framed as a failure to

perform a proper function-by-function analysis, the crux of Marquez's argument appears to be that the ALJ's weighting of this function report was improper. (*See* Doc. 28 at 25). The Commissioner argues that the ALJ adequately explained her weighting of the third-party statement and properly considered the opinions contained therein. (*See* Doc. 33 at 11-12).

Although the Commissioner generally applies the same factors when weighting opinions from medical sources and non-medical sources such as family members, not all of those factors will apply to all sources since evaluation depends on the facts of the case. 20 C.F.R. § 404.1527(f)(1). As such, the ALJ need only provide enough reasoning to "allow[] a claimant or subsequent reviewer to follow [her] reasoning" when affording weight to a non-medical source. *Id.* § 404.1527(f)(2). Here, the ALJ afforded significant weight to the opinions stated in the third-party function report, rejecting those opinions only to the extent that they differed from those of objective medical sources. (*See* AR at 68). Consistency with other evidence is a proper consideration for an ALJ to cite in assigning weight to a family member's opinions. *See* SSR 06-3p, 2006 WL 2329939, at *6 (Aug. 9, 2006) (explaining that ALJs weighting such opinions may "consider such factors as the nature and extent of the relationship, whether the evidence is consistent with other evidence, and any other factors that tend to support or refute the evidence").[7] Because the Court can follow the ALJ's reasoning, and because the ALJ's weighting of the third-party report is supported by substantial evidence, the Court will not disturb that assessment.

In that light, Marquez has not shown that the ALJ's failure to adopt the cited restrictions from the third-party function report amounted to error. The ALJ referred to multiple medical

---

[7] Although SSR 06-3p has been rescinded for claims filed on or after March 27, 2017, *see* SSR 96-2p, 2017 WL 3928298, at *1 (Mar. 27, 2017), that guidance remains entitled to deference here because Plaintiff's claims were filed before that date.

source opinions and records in determining Marquez's RFC (*see* AR at 64-68), and aside from the arguments that the Court has already rejected, Marquez does not contend that the limitations outlined in this RFC were unsupported by substantial evidence. Moreover, aside from her rejected contentions concerning Dr. Lopez's opinions, Marquez does not describe any ways in which the restrictions described in the third-party function report (*see* Doc. 28 at 25 n.16) were consistent with medical evidence but nonetheless omitted from the RFC. For these reasons, the Court finds no error in the ALJ's handling of the third-party function report, and remand on this basis is not warranted.

### D. RFC Function-By-Function Analysis

Finally, Marquez suggests that the ALJ failed to engage in a proper function-by-function assessment in devising her RFC. (*See* Doc. 28 at 25). However, in purporting to elaborate on this position, Marquez simply points to the ALJ's alleged error in handling her mother's third-party function report (*see id.*), an argument that the Court has already rejected. The Commissioner correctly notes that the ALJ assigned Marquez an RFC for light work—which itself imposes significant restrictions on certain activities[8]—before adding additional limitations as to other functions and discussing the reasons for these restrictions. (*See* Doc. 33 at 11) (citing AR at 64). And rather than "overlook[ing]" them (*see* Doc. 28 at 25 & n.16), the ALJ's narrative analysis repeatedly rejected the need for any greater restrictions on lifting, walking, standing, and paying attention. (*See* AR at 65-67). Thus, in reviewing the RFC reached by the ALJ, the Court can follow the ALJ's reasoning and determine that correct legal standards were applied. Nothing more is required here. *See, e.g.*, *Hendron v. Colvin*, 767 F.3d 951, 956-57 (10th Cir. 2014) (citing *Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1166 (10th Cir. 2012)) (finding no error in ALJ's

---

[8] *See, e.g.*, 20 C.F.R. § 404.1567(b) (describing physical restrictions implied by a "light work" classification).

failure to explicitly describe limitations which were either encapsulated by claimant's work restrictions or rejected); *see also, e.g.*, *Garcia v. Saul*, No. 19-cv-00873 JHR, 2021 WL 39675, at *8-10 (D.N.M. Jan. 4, 2021) (citing *Hendron*, 767 F.3d at 954-57) (rejecting argument that ALJ failed to conduct proper RFC assessment where "the ALJ's decision discusse[d] and addresse[d] any pertinent limitations and [was] otherwise supported by substantial evidence").

## V. Conclusion

Having conducted a thorough review of the entire administrative record, the Court concludes that the ALJ applied the correct legal standards and that her factual findings were supported by substantial evidence. Marquez's arguments to the contrary are without merit. Therefore, Marquez's motion to remand (Doc. 28) is **DENIED**.

_____
**KEVIN R. SWEAZEA**
**UNITED STATES MAGISTRATE JUDGE**